SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Roland Barral (NJ Bar No. 031411983)
One Manhattan West
New York, NY 10001
(212) 735-3000

Armando Gomez (*pro hac vice* motion forthcoming)
Aaron Hsu (*pro hac vice* motion forthcoming)
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7000

*Attorneys for Plaintiff Jennifer Zuch*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER ZUCH, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT**

Civil Action No.:

Plaintiff, Jennifer Zuch ("Zuch"), residing at 112 Westervelt Avenue, Tenafly, NJ 07670, hereby brings this suit for a refund of U.S. federal income taxes that were erroneously collected and illegally retained by Defendant, the United States of America ("United States"), whose attorneys have offices at 970 Broad Street, 7th Floor, Newark, NJ 07102, and as the basis for this Complaint alleges as follows:

## <u>NATURE OF THIS DISPUTE</u>

1.     This action arises under the Internal Revenue Code of 1986, as amended and codified in Title 26 of the United States Code, for the recovery of U.S. federal income taxes erroneously collected and illegally retained by the Internal Revenue Service (the "<u>IRS</u>") for Zuch's taxable years ending December 31, 2010; December 31, 2012; December 31, 2013; and December 31, 2018 (the "<u>2010 Tax Year</u>," "<u>2012 Tax Year</u>," "<u>2013 Tax Year</u>," and "<u>2018 Tax Year</u>," respectively, and together, the "<u>At-Issue Tax Years</u>").

2.     Zuch seeks recovery of a total of $42,245.19 in overpayments of federal income tax, together with interest thereon as allowed by law.

3.     In 2010 and 2011, Zuch and her then-husband, Patrick Gennardo ("<u>Gennardo</u>"), made two joint payments of estimated tax to the IRS totaling $50,000.00. Zuch and Gennardo later filed separate income-tax returns for the 2010 Tax Year. As permitted by the federal income-tax regulations and binding IRS guidance, Zuch and Gennardo allocated the entirety of these payments to Zuch's tax liability for the 2010 Tax Year. Together, the two payments exceeded by $21,918.00 Zuch's then-outstanding tax liability for that year, which was $28,082.00.

4.     Governing law required the IRS to apply the $50,000.00 in payments to Zuch's income-tax account and to refund her the balance of $21,918.00. But ignoring the governing law, the IRS failed to do so. Because the IRS failed to refund

2

to Zuch the balance of the joint payments of estimated tax, Zuch seeks to recover the $21,918.00 in overpayments illegally retained by the United States.

5.    But the IRS's error with respect to the 2010 and 2011 payments led to a further cascade of severe and erroneous tax consequences. These consequences resulted from the $28,082.00 of tax that the IRS now considered unpaid.

6.    First, in addition to the $28,082.00 of tax, the IRS also assessed a penalty against Zuch of $7,020.50 for failure to file her tax return on time. But no such penalty applies if the tax liability required to shown on the return had been timely paid. Thus, had the IRS correctly applied the 2010 and 2011 payments to Zuch's account, no such penalty would have been assessed.

7.    Moreover, to satisfy the allegedly unpaid tax and penalty, as well as interest on that amount, the IRS redirected tax refunds that Zuch was owed in years 2012, 2013, 2014, 2015, and 2018. The IRS even threatened to levy on Zuch's property, until she filed a lawsuit in the United States Tax Court to contest the attempted levy (which the IRS eventually abandoned).

8.    All told, between 2012 and 2019, the IRS withheld from Zuch more than $46,000.00 of tax overpayments that she was legally entitled to, instead redirecting them to pay a phantom 2010 tax liability. Although Zuch cannot now, for technical legal reasons, sue to recover that full sum, she seeks by way of this

3

Complaint to recover $20,327.19 of that amount (corresponding to amounts redirected for the 2012, 2013, and 2018 Tax Years).

9.    In total, between the $21,918.00 overpayment that should have been refunded to Zuch for the 2010 Tax Year and the $20,327.19 in redirected overpayments that should have been refunded to Zuch for the 2012, 2013, and 2018 Tax Years, the IRS has illegally retained $42,245.19 of Zuch's overpayments. Zuch now seeks relief in this Court to recover that amount, plus interest thereon as allowed by law.

## THE PARTIES

10.    Zuch is an individual who resides in the state of New Jersey.

11.    The Defendant is the United States of America.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter pursuant to I.R.C. § 7422 and 28 U.S.C. § 1346(a)(1).[1]

13.    Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1402(a)(2) because Zuch resides in New Jersey.

---

[1]    Unless otherwise noted, all "I.R.C." or "section" references herein refer to the Internal Revenue Code of 1986, as amended, codified at title 26 of the United States Code (the "Code"), and all "Treasury Regulation" and "Treas. Reg." section references herein are to sections of the Treasury Regulations promulgated under the Code, codified at title 26 of the Code of Federal Regulations.

14.     A taxpayer must comply with certain statutory prerequisites before she can properly invoke this Court's jurisdiction in a tax refund suit—namely, the taxpayer must file an administrative refund claim with the IRS and then file a refund suit no earlier than six months from the date of filing the administrative refund claim and no later than two years from the date the IRS mails a notice of disallowance with respect to the claim. I.R.C. §§ 6532(a), 7422.

15.     Zuch complied with these requirements before filing this complaint because she filed Forms 1040 or 1040X, as applicable, for each of the At-Issue Tax Years—specifically, Zuch's Amended 2010 Return and her 2012 Tax Return, 2013 Tax Return, and 2018 Tax Return, as defined below—and waited more than six months before filing this Complaint. *See* Treas. Reg. § 301.6402-3(a)(1), (2) (requiring claims for refund of income tax to be made on the "appropriate income tax return" or a Form 1040X). Moreover, the IRS has not mailed a notice of disallowance with respect to any of Zuch's claims for the At-Issue Tax Years.

16.     In particular, in related litigation before the U.S. Court of Appeals for the Third Circuit, the government conceded to that court that the government "has no record of sending [to Zuch] a notice of disallowance of a refund claim for tax year 2010." Suppl. Br. for the Appellee at 20, *Zuch v. Commissioner*, No. 22-2244 (3d Cir. Aug. 3, 2023), ECF No. 52. The government accordingly conceded that "a court could find that Zuch could bring [a refund] suit." *Id.* at 19.

17. The government has similarly conceded this Court's jurisdiction for the At-Issue Tax Years in its petition for certiorari seeking Supreme Court review of the Third Circuit's subsequent decision. *See* Br. for Pet'r at 15, *Commissioner v. Zuch*, No. 24-416 (U.S. Feb. 14, 2025) (stating that Zuch "may dispute the IRS's allocation of the 2010 estimated payments and her subsequent overpayments in a refund suit, the traditional mechanism for such challenges"); *see also id.* at 3 (stating that Zuch "can proceed under the general rule and dispute the assessment and collection of her taxes in a refund suit"); *id.* at 34 (arguing that a favorable outcome for the government in the related litigation "will not foreclose [Zuch] from seeking judicial review because she could file a refund suit").

18. Before filing this Complaint, Zuch fully paid her federal income-tax liabilities for the At-Issue Tax Years. *See Flora v. United States*, 362 U.S. 145 (1960).

## **LEGAL BACKGROUND AND FACTUAL ALLEGATIONS**

### A.   **Under the Estimated Tax System, Married Taxpayers May Make Joint Estimated Tax Payments, to Be Allocated as They Agree**

19. The federal individual income tax works on a "pay-as-you-go" or withholding basis, meaning that collections of tax are made during each taxable year as income-tax liabilities are incurred. *See United States v. Hardy*, 299 F.2d 600, 602 (4th Cir. 1962). Under this system, the Internal Revenue Code requires taxpayers to

make estimated tax payments over the course of each taxable year (which, for individuals, generally corresponds with the calendar year). *See* I.R.C. § 6654.

20.    A common way for taxpayers to meet their estimated-tax obligations is through withholding tax on their wages. A taxpayer who is paid a wage or salary as an employee is generally subject to withholding tax, i.e., the employer withholds an amount of tax from each paycheck and forwards the amount to the United States Treasury. *See* I.R.C. § 3402. With exceptions not relevant here, such amounts are credited to the taxpayer's income taxes for the taxable year in which the withholdings took place. *See* I.R.C. § 31(a). The sum of such withholdings is deemed to be a payment of estimated tax for the taxable year. *See* I.R.C. § 6654(g)(1).

21.    Generally, if a taxpayer's withholdings are insufficient to meet her estimated tax payment requirement for the year, she is required to make additional estimated tax payments directly to the Treasury. After an estimated tax payment is made to the Treasury, it is "credited to the income tax account of the person from whom it is withheld." *United States v. Roberts*, 425 F. Supp. 1281, 1283 (D. Del. 1977); *see also* I.R.C. § 31(a)(1). The requirement to pay estimated tax is enforced by means of a penalty for underpayment of estimated tax under section 6654.

22.    The Code generally requires any taxpayer who is liable for federal income tax to file a federal income-tax return. *See* I.R.C. § 6013. On each return, the taxpayer must select a filing status, which determines the tax rate to be applied and

has various other tax consequences, such as eligibility for certain deductions. *See, e.g.*, I.R.C. §§ 1, 3.

23.    Married taxpayers may file taxes either separately or jointly. *See* I.R.C. § 6013(a). If married taxpayers elect to file jointly, they file one return and become jointly and severally liable for the tax as computed on the taxpayers' aggregate income. *Id.* § 6013(d)(3).

24.    Treasury Regulation section 1.6654-2(e)(5) allows a husband and wife to make a joint payment of estimated tax. The only requirements that must be satisfied for a husband and wife to be able to make an joint payment of estimated tax are set forth in Treasury Regulation section 1.6654-2(e)(5)(i), which states in relevant part:

> A husband and wife may make a joint payment of estimated tax even though they are not living together. However, a joint payment of estimated tax may not be made if the husband and wife are separated under a decree of divorce or of separate maintenance. A joint payment of estimated tax may not be made if the taxpayer's spouse is a nonresident alien (including a nonresident alien who is a bona fide resident of Puerto Rico or a possession to which section 931 applies during the entire taxable year), unless an election is in effect for the taxable year under section 6013(g) or (h) and the regulations. In addition, a joint payment of estimated tax may not be made if the taxpayer's spouse has a taxable year different from that of the taxpayer.

25.    Under Treasury Regulation section 1.6654-2(e)(5)(ii)(A), even if a husband and wife make a joint payment of estimated tax, they still may subsequently

8

elect to file separate returns. In that event, the estimated tax payment "may be divided between [the spouses] in such manner as they may agree."

**B.    Zuch and Her Then-Husband Made Two Joint Payments of Estimated Tax in 2010 and 2011**

26.    Zuch was married to Gennardo from approximately 1993 until they finalized their divorce in 2014.

27.    In particular, Zuch and Gennardo were married at all times during Tax Year 2010 and Tax Year 2011.

28.    On or about June 15, 2010, Zuch and Gennardo made a joint estimated payment of tax in the amount of $20,000.00 (the "2010 Estimated Tax Payment"). That payment was made by personal check, drawn on a checking account jointly owned by Zuch and Gennardo. The check showed both Zuch and Gennardo's names on its face.

29.    The 2010 Estimated Tax Payment was accompanied by a completed Form 1040-ES, a payment voucher for estimated tax. The voucher showed the names of both Zuch and Gennardo.

30.    On or about January 10, 2011, Zuch and Gennardo made another joint estimated payment of tax in the amount of $30,000.00 (the "2011 Estimated Tax Payment"). That payment was made by official bank check, issued by Citibank, from an account jointly owned by Zuch and Gennardo.

31.    The 2011 Estimated Tax Payment was accompanied by a cover letter that included in its subject line both Zuch's and Gennardo's names.

32.    At no time in 2010 or 2011 were Zuch and Gennardo separated under a decree of divorce.

33.    At no time in 2010 or 2011 were Zuch and Gennardo separated under a decree of separate maintenance.

34.    Zuch was a citizen of the United States at all times during 2010 and 2011.

35.    Gennardo was a citizen of the United States at all times during 2010 and 2011.

36.    Zuch and Gennardo had the same taxable years during 2010 and 2011, namely, the calendar year.

37.    The 2010 Estimated Tax Payment was a joint payment of estimated tax under Treasury Regulation section 1.6654-2(e)(5)(i).

38.    The 2011 Estimated Tax Payment was a joint payment of estimated tax under Treasury Regulation section 1.6654-2(e)(5)(i).

**C.    Zuch and Gennardo Agreed to Allocate the 2010 and 2011 Estimated Tax Payments Entirely to Zuch**

39.    Treasury Regulation section 1.6654-2(e)(5)(ii)(B) provides an allocation rule "[i]n the event the husband and wife fail to agree to a division of the estimated tax payment." But in Revenue Ruling 76-140, the IRS stated that this rule

10

"*only* applies when the parties are unable to agree to a division of their estimated tax payments." Rev. Rul. 76-140, 1976-1 C.B. 376 (emphasis added). This ruling is binding on the Government. *See, e.g.*, *Est. of McLendon v. Commissioner*, 135 F.3d 1017, 1024 (5th Cir. 1998).

40.    On or about September 12, 2012, Zuch filed her federal income-tax return for Tax Year 2010 on Form 1040, U.S. Individual Income Tax Return ("Zuch's Original 2010 Tax Return").

41.    On Zuch's Original 2010 Tax Return, she selected a filing status of married filing separately and reported an overpayment of $731.00. Zuch requested that this overpayment amount be refunded to her.

42.    The IRS accepted Zuch's Original 2010 Tax Return, including her self-reported tax of $7,736.00. However, the IRS declined to refund the $731.00 overpayment to Zuch. Instead, the IRS offset the overpayment against an outstanding tax liability for the tax year ending December 31, 2008.

43.    On or about September 12, 2012, Gennardo filed his federal income-tax return for Tax Year 2010 on Form 1040, U.S. Individual Income Tax Return ("Gennardo's Original 2010 Tax Return").

44.    On Gennardo's Original 2010 Tax Return, he selected a filing status of married filing separately and reported tax due of $383,354.00. He also claimed $10,000.00 in estimated tax payments.

45.     On November 14, 2012, Zuch filed a Form 1040X, Amended U.S. Individual Income Tax Return for Tax Year 2010 ("Zuch's Amended 2010 Return").

46.     On Zuch's Amended 2010 Return, she reported an increase in adjusted gross income in the amount of $71,000.00, for a total of $145,493.00. This increase resulted from a retirement account distribution of $71,000.00 that Zuch had inadvertently omitted from Zuch's Original 2010 Return.

47.     Zuch's Amended 2010 Return also claimed two additional dependents and deleted a previous claim of a $27.00 General Business Credit. These changes, combined with the increase in adjusted gross income, resulted in additional tax due in the amount of $27,682.00. Furthermore, the increase in adjusted gross income made Zuch no longer eligible for a $400.00 Making Work Pay refundable tax credit.

48.     In Zuch's Amended 2010 Return, Zuch reported estimated tax payments in the amount of $50,000.00.

49.     In Zuch's Amended 2010 Return, Zuch claimed an overpayment of tax in the amount of $21,918.00 (calculated as the $50,000.00 in estimated tax payments, less the sum of $27,682.00 in additional tax due and $400.00 of tax credit that Zuch was no longer eligible for). Zuch requested that the entire amount be refunded to her.

50.    Zuch explained in Zuch's Amended 2010 Return that the bases for her refund claim included that she was "includ[ing] estimated payments previously omitted."

51.    Gennardo also filed an amended return for 2010 in November 2012 on Form 1040X. On that amended return he reported $0 in prepayments.

52.    On or about March 1, 2013, Gennardo filed another Form 1040X, Amended U.S. Individual Income Tax Return ("Gennardo's Second Amended 2010 Return").

53.    Gennardo's Second Amended 2010 Return reported $0 in prepayments and included a statement instructing the IRS that the $50,000.00 in estimated payments should be allocated to Zuch.

54.    Zuch and Gennardo agreed to a division of the 2010 Estimated Tax Payment. This is evidenced by, among other things, their filing separate amended returns where Zuch claimed all of the 2010 Estimated Tax Payment, and Gennardo claimed none of it.

55.    Consequently, the IRS was required to allocate 100% of the 2010 Estimated Tax Payment to Zuch. *See* Rev. Rul. 76-140.

56.    The allocation rule of Treasury Regulation section 1.6654-2(e)(5)(ii) does not apply to the 2010 Estimated Tax Payment.

57.    Zuch and Gennardo agreed to a division of the 2011 Estimated Tax Payment. This is evidenced by, among other things, their filing separate amended returns where Zuch claimed all of the 2011 Estimated Tax Payment, and Gennardo claimed none of it.

58.    Consequently, the IRS was required to allocate 100% of the 2010 Estimated Tax Payment to Zuch. *See* Rev. Rul. 76-140.

59.    The allocation rule of Treasury Regulation section 1.6654-2(e)(5)(ii) does not apply to the 2011 Estimated Tax Payment.

**D.    Zuch Is Entitled to a Refund of $21,918.00 for the 2010 Tax Year**

60.    The 2010 and 2011 Estimated Tax Payments fully satisfied the additional tax liability shown on Zuch's Amended 2010 Tax Return, which was $28,082.00.

61.    Moreover, the excess of the 2010 and 2011 Estimated Tax Payments over that amount constituted an overpayment in the amount of $21,918.00. *See Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947) ("[T]he payment of more than is rightfully due is what characterizes an overpayment.").

62.    Section 6402(a) provides that in the case of "any overpayment," the IRS may credit the amount of that overpayment against any other income-tax liability of the taxpayer (or against certain other liabilities not relevant here). If there

are no such liabilities, then the IRS "shall . . . refund" such an overpayment to the taxpayer.

63.    The due date for Zuch's income-tax return for Tax Year 2010, determined without regard for any extension, was April 15, 2011.  *See* I.R.C. § 6072(a).

64.    Because the 2010 and 2011 Estimated Tax Payments were estimated income tax payments for the 2010 Tax Year, they are deemed to have been paid on April 15, 2011 (the due date for Zuch's income-tax return for that year, determined without regard for any extension) under sections 6513(b)(2) and 6072(a).

65.    Section 6511(a) requires that a taxpayer may only recover an overpayment of tax if she files a claim for such refund within three years from the time the return was filed or within two years from the time the tax was paid. Zuch's claim for the 2010 Tax Year is timely under section 6511 because the 2010 and 2011 Estimated Tax Payments were deemed to have been paid on April 15, 2011 and because Zuch's Amended 2010 Tax Return was filed on November 14, 2012, less than two years later.

66.    As of the date that Zuch filed her Amended 2010 Return, and excluding the 2010 Tax Year, Zuch had no outstanding tax liabilities for any year within the applicable statute of limitations.

67.    As of the date that the IRS processed Zuch's Amended 2010 Return, and excluding the 2010 Tax Year, Zuch had no outstanding tax liabilities for any year within the applicable statute of limitations.

68.    The IRS was required to refund $21,918.00 to Zuch for her 2010 Tax Year. The IRS failed to do so, contrary to law, and therefore Zuch is entitled to recover $21,918.00 from the United States for her 2010 Tax Year.

**E.    The IRS's Failure to Properly Credit Zuch with the 2010 and 2011 Estimated Tax Payments Resulted in Illegal Assessment of a Failure-to-File Penalty Against Her**

69.    Section 6651 provides that a taxpayer who has failed to file a tax return as required by the Internal Revenue Code is liable for an addition to tax, commonly referred to as the failure-to-file penalty. *See* I.R.C. § 6651(a)(1). The amount of the penalty is based on the amount of the tax required to be shown on the return, less the amount of any timely payment, such as withholdings from wages or a timely estimated tax payment. *See* I.R.C. § 6651(a)(1), (b)(1). The penalty is generally 5 percent of that amount for every month or portion of a month where the return is not filed, up to a maximum of 25 percent. *See* I.R.C. § 6651(a)(1).

70.    As noted, the IRS assessed a failure-to-file penalty of $7,020.50 for Zuch's 2010 Tax Year (the "Disputed 2010 Penalty," and together with the Disputed 2010 Tax Liability, the "Disputed 2010 Balance"). This amount was the maximum

failure-to-file penalty of 25 percent multiplied by $28,082.00, the additional tax shown on Zuch's Amended 2010 Return.

71.    Because the amount of the failure-to-file penalty is based on the amount of tax owed but not paid, a taxpayer is not subject to a failure-to-file penalty if she timely pays (by the due date of tax) the amount of tax ultimately required to be shown on the return.

72.    The due date for Zuch to pay her 2010 Tax Year liability was April 15, 2011. *See* I.R.C. §§ 6072(a), 6151(a).

73.    As noted, because the 2010 and 2011 Estimated Tax Payments were estimated income tax payments for the 2010 Tax Year, they are deemed to have been paid on April 15, 2011 (the due date for Zuch's income-tax return for that year) under sections 6513(b)(2) and 6072(a).

74.    If the 2010 and 2011 Estimated Tax Payments had been credited against Zuch's tax liabilities, those payments would have exceeded the amount of tax required to be shown on her 2010 income-tax return. Consequently, no failure-to-file penalty would have applied.

75.    Because the 2010 and 2011 Estimated Tax Payments should have been credited against Zuch's tax liabilities under governing law, the IRS was without authority to assess the Disputed 2010 Penalty against Zuch.

**F.    Zuch Is Entitled to a Refund of $3,301.00 for the 2012 Tax Year**

76.    As noted, section 6402(a) allows the IRS to apply a taxpayer's overpayment against another outstanding federal tax liability (commonly referred to as an "offset"), rather than refunding it to the taxpayer.

77.    On or about April 15, 2013, Zuch filed her federal income-tax return for Tax Year 2012 on Form 1040, U.S. Individual Income Tax Return (the "2012 Tax Return").

78.    On her 2012 Tax Return, Zuch reported total tax of $1,622.00 and total payments of $4,923.00, resulting in an overpayment of $3,301.00. Zuch requested a refund of the entire overpayment amount of $3,301.00.

79.    Zuch's 2012 Tax Return constituted a claim for refund because it contained a statement setting forth the amount determined as an overpayment and requested a refund for that amount. *See* Treas. Reg. § 301.6402-3(a)(5) (third sentence).

80.    The IRS refused to refund to Zuch any of the overpayment shown on Zuch's 2012 Tax Return. Instead, on or about July 15, 2013, the IRS offset the $3,301.00 against the Disputed 2010 Balance.

81.    The due date for Zuch's income-tax return for Tax Year 2012, determined without regard for any extension, was April 15, 2013.  *See* I.R.C. § 6072(a).

18

82.    Zuch's overpayment for the 2012 Tax Year arose from taxes withheld by her employer and, therefore, are deemed to have been paid on April 15, 2013 (the due date for Zuch's income-tax return for the 2012 Tax Year, determined without regard for any extension) under sections 6513(b)(1) and 6072(a).

83.    Zuch's claim for the 2012 Tax Year is timely under section 6511 because her 2012 Tax Return was filed on April 15, 2013, within two years from the deemed payment date of the overpayment sought to be recovered.

84.    As of April 15, 2013, Zuch did not have an outstanding tax liability for her 2010 Tax Year by reason of the 2010 and 2011 Estimated Tax Payments. Consequently, the IRS was without authority to apply Zuch's overpayment for her 2012 Tax Year against any tax liabilities for her 2010 Tax Year.

85.    As of April 15, 2013, and excluding the 2010 Tax Year, Zuch had no outstanding tax liabilities for any year within the applicable statute of limitations.

86.    The IRS was required to refund $3,301.00 to Zuch for her 2012 Tax Year. The IRS failed to do so, contrary to law, and therefore, Zuch is entitled to recover $3,301.00 from the United States for her 2012 Tax Year.[2]

---

[2]    On or about March 12, 2014, Zuch filed an amended federal income-tax return for Tax Year 2012 on Form 1040X, Amended U.S. Individual Income Tax Return. This return made no changes except that Zuch changed the child she was claiming as a dependent from her son to her daughter, to make it consistent with

*(cont'd)*

**G.    Zuch Is Entitled to a Refund of $2,143.00 for the 2013 Tax Year**

87.    On or about June 5, 2014, Zuch filed her federal income-tax return for Tax Year 2013 on Form 1040, U.S. Individual Income Tax Return (the "2013 Tax Return").

88.    On her 2013 Tax Return, Zuch reported total tax of $2,233.00 and total payments of $5,139.00, resulting in an overpayment of $2,906.00. Zuch requested a refund of the entire amount of $2,906.00.

89.    Zuch's 2013 Tax Return constituted a claim for refund because it contained a statement setting forth the amount determined as an overpayment and requested a refund for that amount. *See* Treas. Reg. § 301.6402-3(a)(5) (third sentence).

90.    The IRS disallowed Zuch's claim of a Child Tax Credit in the amount of $763.00, which increased her total tax by that amount and thereby reduced her overpayment by that amount, to $2,143.00. (Zuch does not challenge that adjustment in this case.)

--------------------

her husband's return for the same taxable year. In particular, the Amended 2012 Tax Return continued to show an overpayment of $3,301.00.

91.    However, the IRS refused to refund to Zuch any of the overpayment shown on Zuch's 2013 Tax Return. Instead, on or about April 15, 2014, the IRS applied the remaining overpayment of $2,143.00 against her Disputed 2010 Balance.

92.    The due date for Zuch's income-tax return for Tax Year 2013, determined without regard for any extension, was April 15, 2014.  *See* I.R.C. § 6072(a).

93.    Zuch's overpayment for the 2013 Tax Year arose from taxes withheld by Fidelity Investments upon distribution of funds from a retirement investment account and, therefore, is deemed to have been paid on April 15, 2014 (the due date for Zuch's income-tax return for the 2013 Tax Year, determined without regard for any extension) under sections 6513(b)(1) and 6072(a).

94.    Zuch's claim for the 2013 Tax Year is timely under section 6511 because her 2013 Tax Return was filed on April 15, 2014, within two years from the deemed payment date of the overpayment sought to be recovered.

95.    As of April 15, 2014, Zuch did not have an outstanding tax liability for her 2010 Tax Year by reason of the 2010 and 2011 Estimated Tax Payments. Consequently, the IRS was without authority to apply Zuch's overpayment for her 2013 Tax Year against any tax liabilities for her 2010 Tax Year.

96.    As of April 15, 2014, and excluding the 2010 Tax Year, Zuch had no outstanding tax liabilities for any year within the applicable statute of limitations.

97.    The IRS was required to refund $2,143.00 to Zuch for her 2013 Tax Year. The IRS failed to do so, contrary to law, and therefore, Zuch is entitled to recover $2,143.00 from the United States for her 2012 Tax Year.

**H.    Zuch Is Entitled to a Refund of $14,883.19 for the 2018 Tax Year**

98.    On or about November 4, 2019, Zuch filed her federal income-tax return for Tax Year 2018 on Form 1040, U.S. Individual Income Tax Return (the "2018 Tax Return").

99.    On her 2018 Tax Return, Zuch reported tax owed of $39,446.00 and estimated tax payments of $55,900.00, resulting in an overpayment of $16,454.00. Zuch also reported an estimated tax penalty of $1,133.00. She requested that the IRS apply the remaining overpayment of $15,321.00 against her 2019 income-tax liability.

100.    Zuch's 2018 Tax Return constituted a claim for refund because it contained a statement setting forth the amount determined as an overpayment and elected to apply that amount as a credit against Zuch's estimated income tax for the immediately succeeding taxable year. *See* Treas. Reg. § 301.6402-3(a)(5) (third sentence).

101.    The IRS applied $437.81 of the remaining overpayment to Zuch's 2019 tax liability. But the IRS refused either to apply any of the remaining balance of $14,883.19 to Zuch's 2019 tax liability or to refund any of that remaining balance to

Zuch. Instead, on or about April 15, 2019, the IRS applied the remaining balance of $14,883.19 against the Disputed 2010 Balance.

102.    The due date for Zuch's income-tax return for Tax Year 2018, determined without regard for any extension, was April 15, 2019.    *See* I.R.C. § 6072(a).

103.    The payments that gave rise to the overpayment in the 2018 Tax Return were a payment of estimated tax in the amount of $9,900.00, made on or about January 18, 2018; and a payment made with a request for an extension of time to file Zuch's tax return, made on or about April 15, 2018. Because these payments were estimated income tax payments for the 2018 Tax Year, they are deemed to have been paid on April 15, 2019 (the due date for Zuch's income-tax return for the 2018 Tax Year, determined without regard for any extension) under sections 6513(b)(2) and 6072(a).

104.    Zuch's claim for the 2018 Tax Year is timely under section 6511 because her 2018 Tax Return was filed on April 15, 2019, within two years from the deemed payment date of the overpayment sought to be recovered.

105.    As of April 15, 2019, Zuch did not have an outstanding tax liability for her 2010 Tax Year by reason of the 2010 and 2011 Estimated Tax Payments. Consequently, the IRS was without authority to apply any of Zuch's overpayment for her 2019 Tax Year against any tax liabilities for her 2010 Tax Year.

23

106.    As of April 15, 2019, and excluding the 2010 Tax Year, Zuch had no outstanding tax liabilities for any year within the applicable statute of limitations.

107.    The IRS was required to refund $16,454.00 to Zuch for her 2013 Tax Year. The IRS failed to do so, contrary to law, and instead refunded only $437.81 to Zuch. Therefore, Zuch is entitled to recover from the United States the balance of $14,883.19 for her 2018 Tax Year.

108.    The following table summarizes by tax year the amounts of overpayments that Zuch is entitled to recover in this case:

| Tax Year | Amount |
| --- | --- |
| 2010 Tax Year | $21,918.00 |
| 2012 Tax Year | $3,301.00 |
| 2013 Tax Year | $2,143.00 |
| 2018 Tax Year | $14,883.19 |
| **Total** | **$42,245.19** |

**I.    The IRS's Refusal to Properly Credit the 2010 and 2011 Estimated Tax Payments to Zuch's Account Caused Zuch Additional Harm, Relief for Which Is Not Sought in This Complaint**

109.    The IRS also applied overpayments from two other tax years to Zuch's Disputed 2010 Balance. Specifically, on or about October 19, 2015, the IRS applied $873.63 of Zuch's overpayment for her taxable year ending December 31, 2014 to the Disputed 2010 Tax Liability. Additionally, on or about August 16, 2016, the IRS applied $19,931.87 of Zuch's overpayment for her taxable year ending December 31, 2015 to the Disputed 2010 Tax Liability. Although these amounts were also

24

illegally collected and retained by the IRS given that the 2010 and 2011 Estimated Tax Payments fully satisfied the Disputed 2010 Tax Liability, Zuch is not seeking a refund of these amounts by way of this Complaint because she has not satisfied the statutory prerequisites for bringing refund claims for these taxable years.

110.    Moreover, because the IRS considered the Disputed 2010 Balance to be a delinquent tax debt, the IRS in 2013 sought to levy on Zuch's property. In response, Zuch challenged this levy in the United States Tax Court. The proceedings were lengthy, *see Zuch v. Commissioner*, 97 F.4th 81, 90–91 (3d Cir. 2024), and have culminated in a case now pending before the United States Supreme Court, *see Zuch v. Commissioner*, No. 24-416 (U.S.), *cert. petition granted* (Jan. 10, 2025).

111.    Although Zuch does not seek damages from the United States for these consequences of the IRS's illegal actions with respect to the 2010 and 2011 Estimated Tax Payments, they put into perspective the severe results that those actions have caused her.

## CAUSES OF ACTION

### Count One
### For the 2010 Tax Year, Zuch Is Entitled to a Refund of $21,918.00

112.    Zuch incorporates herein by reference and realleges all allegations in paragraphs 1 through 111.

113.    The IRS was required to apply the 2010 and 2011 Estimated Tax Payments against Zuch's Disputed 2010 Tax Liability.

114.   The 2010 and 2011 Estimated Tax Payments exceeded by $21,918.00 the increased tax liability for Tax Year 2010, resulting in an overpayment of that amount.

115.   Contrary to law, the IRS has refused to refund that amount to Zuch. Therefore, Zuch is entitled to recover from the United States the amount of $21,918.00, or such greater amount as is legally refundable, plus statutory interest as allowed by law.

### Count Two
### For the 2012 Tax Year, Zuch Is Entitled to a Refund of $3,301.00

116.   Zuch incorporates herein by reference and realleges all allegations in paragraphs 1 through 115.

117.   Zuch had an overpayment in the amount of $3,301.00 for her 2012 Tax Year.

118.   Contrary to law, the IRS has refused to refund that amount to Zuch. Therefore, Zuch is entitled to recover from the United States the amount of $3,301.00, or such greater amount as is legally refundable, plus statutory interest as allowed by law.

### Count Three
### For the 2013 Tax Year, Zuch Is Entitled to a Refund of $2,143.00

119.   Zuch incorporates herein by reference and realleges all allegations in paragraphs 1 through 118.

120.   Zuch had an overpayment in the amount of $2,143.00 for her 2013 Tax Year.

121.   Contrary to law, the IRS has refused to refund that amount to Zuch. Therefore, Zuch is entitled to recover from the United States the amount of $2,143.00, or such greater amount as is legally refundable, plus statutory interest as allowed by law.

### *Count Four*
**For the 2018 Tax Year, Zuch Is Entitled to a Refund of $14,883.19**

122.   Zuch incorporates herein by reference and realleges all allegations in paragraphs 1 through 121.

123.   Zuch had an overpayment in the amount of $16,454.00 for her 2018 Tax Year.

124.   Contrary to law, the IRS has refused to refund more than $437.81 of that amount to Zuch. Therefore, Zuch is entitled to recover from the United States the remaining amount of $14,883.19, or such greater amount as is legally refundable, plus statutory interest as allowed by law.

### **PRAYER FOR RELIEF**

WHEREFORE, Zuch prays for judgment in her favor and against the United States as follows:

1.   On Count One, awarding damages in favor of Zuch and against the United States in the amount of $21,918.00, plus statutory interest;

2.      On Count Two, awarding damages in favor of Zuch and against the United States in the amount of $3,301.00, plus statutory interest;

3.      On Count Three, awarding damages in favor of Zuch and against the United States in the amount of $2,143.00, plus statutory interest;

4.      On Count Four, awarding damages in favor of Zuch and against the United States in the amount of $14,883.19, plus statutory interest;

5.      That Zuch be granted costs and attorney's fees as allowed by law, including under I.R.C. § 7430; and

6.      That Zuch be granted such other and further relief as this Court deems just and proper.

Dated: March 14, 2025

Respectfully submitted,

s/ Roland Barral
Roland Barral (NJ Bar No. 031411983)
One Manhattan West
New York, NY 10001
(212) 735-3000
roland.barral@skadden.com

Armando Gomez (*pro hac vice* motion forthcoming)
Aaron Hsu (*pro hac vice* motion forthcoming)
**Skadden, Arps, Slate, Meagher & Flom LLP**
1440 New York Avenue, N.W.
Washington, DC  20005
(202) 371-7000
armando.gomez@skadden.com
aaron.hsu@skadden.com

*Attorneys for Plaintiff Jennifer Zuch*

## **LOCAL RULE 11.2 CERTIFICATION**

1.    The matter in controversy is related to the subject of an action in the United States Supreme Court, Docket No. 24-416, captioned *Commissioner of Internal Revenue v. Jennifer Zuch*. The Supreme Court granted a petition for writ of certiorari to the United States Court of Appeals for the Third Circuit for the action captioned *Jennifer Zuch v. Commissioner of Internal Revenue*, Docket No. 22-2244. In turn, that case arose from an appeal from the United States Tax Court's decision in its case captioned *Jennifer Zuch v. Commissioner of Internal Revenue*, Docket No. 25125-14L. The only parties in these cases are the Plaintiff in this action, Jennifer Zuch; and the Commissioner of Internal Revenue.

2.    The matter in controversy is not related to any pending arbitration or administrative proceeding.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 14, 2025.

                                              <u>s/ Roland Barral</u>
Roland Barral (NJ Bar No. 031411983)
One Manhattan West
New York, NY 10001
(212) 735-3000
roland.barral@skadden.com

*Attorney for Plaintiff Jennifer Zuch*